## Richmond.

### WIMBISH v. THE COMMONWEALTH.

1. On a notice to and motion against the treasurer of a county and his sureties for a fine for his failing to submit his bond to the commissioner of accounts within the time prescribed by the act of 1878–79, chap. 60, § 4—HELD :

    1. The motion will not be dismissed for the joining the sureties in it.

    2. The proceeding being in the nature of a criminal prosecution, the motion may be dismissed as to the sureties, and judgment rendered against the treasurer.

2. In such a case the fact that the treasurer was not informed of the passage of the act until after the time prescribed by the act for submitting his bond to the commissioner of accounts, will not relieve him from the penalty provided by the statute for such failure. The law presumes every man to know the law.

In October, 1879, the county court of Mecklenburg imposed a fine of $300 upon L. W. Wimbish, treasurer of the county, for having failed for six weeks in submitting his official bond to the commissioner, as directed by the act of 1878–79, chap. 60, § 4. From this judgment Wimbish obtained a writ of error and *supersedeas* to the circuit court of the said county; and on the 20th of May, 1880, that court dismissed the writ of error. And thereupon Wimbish applied to a judge of this court for a writ of error and *supersedeas;* which was awarded. The case is fully stated in the opinion of Judge *Moncure.*

*Ould & Carrington,* for the plaintiff in error.

*The Attorney-General,* for the Commonwealth.

MONCURE, P., delivered the opinion of the court.

This is a writ of error obtained by Lewis W. Wimbish to a judgment of the circuit court of Mecklenburg county, rendered on the 29th day of May, 1880, dismissing a writ of error and *supersedeas*, which had been awarded by the judge of the said court, in vacation, to a judgment obtained in the county court of said county by the Commonwealth of Virginia against the said Wimbish, for a fine of three hundred dollars, and eleven dollars and forty cents, the costs of the prosecution.

The said judgment of the county court of said county was founded on a notice given by the attorney for the Commonwealth of said county, to the said Wimbish, treasurer of said county, and certain persons, sureties on his official bond as such treasurer, reciting "that whereas it was enacted by the general assembly of Virginia (Acts of Assembly of 1878–79, § 4, chap. 60), that it shall be duty of each county and city treasurer to submit his bond to the commissioner of accounts for his county or city; fifteen days before the March and September terms in each year of the courts of said county or city, for the examination and report to the court by said commissioner; and that whereas the said L. W. Wimbish, treasurer of Mecklenburg county, Va., failed to submit his bond as treasurer as aforesaid to the commissioner of accounts for said county, as required by law, fifteen days before the September term of the county court of said county, which term commenced on the 15th day of September, 1879, and has continuously failed to submit his said bond to said commissioner for each week since the 1st day of September, 1879 (the date when he should have submitted his said bond to said commissioner), up to this the 13th day of October, 1879, and that the said L. W. Wimbish, treasurer as aforesaid, failed to submit his said bond to said commissioner at the time prescribed by law—

Wimbish v. The Commonwealth.

to wit: fifteen days before the September term of the county court of said county, 1879—and his failure to submit his said bond to said commissioner has continued for six weeks since the 1st day of September, 1879, which was the time when he should have so submitted his said bond to said commissioner; and whereas it is enacted that any treasurer who fails to submit his bond to the proper commissioner at the time prescribed by law, shall forfeit fifty dollars each, for each week his failure continues"; and then notifying the said treasurer and his said sureties "that for the recovery of the fines prescribed for the failure, on the part of the said treasurer, to submit his bond to the proper commissioner as aforesaid," he, the said attorney, on behalf of the said Commonwealth, would "move the county court of said county, at the October term thereof, 1879—to wit: on the 20th day of October, 1879—for judgment against "the said treasurer and his sureties" for the sum of fifty dollars for each week since the 1st day of September, 1879, up to this 13th day of October, 1879—to wit: for the sum of fifty dollars for each of six weeks, amounting in the aggregate to the sum of $300, that amount having been forfeited by the said L. W. Wimbish, treasurer as aforesaid, by his failure to submit his bond to said commissioner as hereinbefore stated, this 13th day of October, 1879."

The said notice was duly executed on the said treasurer and all of his said sureties, except W. G. Jackson, who was dead. And the said motion having been continued from time to time until the 15th day of December, 1879, it was on that day made; and the said county court, having fully heard the evidence and argument of counsel, then rendered a judgment dismissing the motion as to the said sureties; but against the said Wimbish, late treasurer as aforesaid, that he should forfeit and pay to the Commonwealth a fine of $300, and that he should pay the costs of the prosecution.

On the trial of the motion the defendant therein, the

said Wimbish, tendered two bills of exceptions, which was signed and sealed and made parts of the record of the case; and are in effect as follows:

In the first of said two bills it is stated that upon the trial of the motion, and after it was gone into, the defendants moved the court to dismiss the notice and motion, for the reason that it was a motion upon the official bond of the treasurer, against him and his sureties, to obtain a judgment against the treasurer for a fine which he had forfeited under section 4, chapter 60, Acts of Assembly 1878–79, in which his sureties should not have been made parties, which motion the court overruled; to which opinion of the court the defendants excepted.

In the second of the said two bills it is stated, that upon the trial of said motion the plaintiff proved that the defendant Wimbish did not submit his official bond as treasurer to the commissioner of accounts, as required by section 4, chapter 60, Acts of Assembly, 1878–79, up to the date of the notice, 13th October, 1879, and there rested its cause. The defendants then proved that the acts of assembly for 1878–79 were not received by the clerk of the said county until about the 1st of September, and that they were not opened or taken out of the box until about the 6th of September; and on the 7th of September, the day on which the board of supervisors met, the clerk of said county placed on a table in his office where the said board met a number of copies of said acts of assembly, saying to the members of the board then present that *there* were the acts of assembly from which they could take a copy; but the treasurer of the county was not present at that time, but was present during the sitting of the board on that day, but did not receive from the clerk or any other source any information of the receipt by the clerk of the acts of assembly for 1878–79 until a few days before the 13th of October, 1879, when he was informed by the attorney for

the Commonwealth that he was required to lay his bond before the commissioner of accounts, as provided by section 4, chapter 60, of said acts of assembly; and that this was the first information ever received by the said Wimbish, from any source whatever, of the existence of a law requiring him to lay his bond before a commissioner of accounts for examination; that very soon after he received said information, he called on C. J. Faulkner, one of the commissioners in chancery of said county court, who he believed to be one of the commissioners authorized by said act to examine his bond, when he was informed by Commissioner Faulkner that the county court would have to designate by order some one of its commissioners to examine his bond before it could be legally examined and reported on. And in a very few days thereafter—to-wit: the 20th day of October, 1879—the said Wimbish was removed from office as treasurer. This being all the evidence introduced by either party, the court dismissed the motion as to all the defendants, except the said Wimbish, and rendered judgment against him for the sum of $300 and costs; to which opinion and judgment of the court the said defendant Wimbish excepted.

There are only two assignments of error in the said judgment of the county court, which are set forth in the said two bills of exceptions. The first is: in not dismissing the motion because the sureties were improperly joined in the notice. If they were improperly made parties, it was contended by the plaintiff in error that the notice ought to have been dismissed; if not, it was contended by him that judgment ought to have been rendered against them.

Very little, if any, reliance seems to have been placed on this assignment of error, and certainly it is not sustainable. The case was a *quasi* criminal prosecution against several defendants, and in such a case nothing is better settled

than that judgment may be rendered against one or more of the defendants and in favor of the rest, or that the prosecution may be enforced against one or more of them and dismissed against the rest. It is unnecessary to cite authority or comment further upon such a question.

The second assignment of error is, the main, if not the only one, relied on by the plaintiff in error in this case, and is upon the ground set forth in the said second bill—viz: that he was wholly ignorant of the existence of a law requiring him to lay his bond before a commissioner of accounts for examination until a few days before the 13th of October, 1879, when he was informed by the attorney for the Commonwealth that he was required to do so by section 4, chapter 60 of said acts of assembly for 1878–79, and that very soon thereafter he proceeded to take measures to do so.

Nothing is better settled than that a public statute goes into full effect in regard to all persons subject thereto from the time prescribed therefor in the statute itself, or in the constitution or general law, of the land, and that ignorance of the existence of such a statute, or of its terms, is not a legal excuse to any such persons for not complying therewith or being bound thereby. The law is assumed to be known by every citizen from the time fixed for it to go into operation; *ignorantia legis neminem excusat.* Sedgwick on the Construction of Statutory and Constitutional Law, page 67 and note (*a*). Other books might be cited to the same effect, but it is unnecessary, as the law has been very long, and is very well settled to the same effect. " Every act of assembly shall commence and be in force upon and after the first day of July next succeeding the passage thereof, unless another day for the commencement thereof be particularly mentioned in the act itself, or be otherwise expressly provided; and the day of passing every act " " shall

be noted in the publication next after the title thereof." Such is our statute law as contained in the Code of 1873, volume 1, page 191, title "of statutes generally, and rules of decision." See also article V, section 8 of the constitution of the State, Code of Virginia, page 73, as to the day of passing each act. This long and well established general rule of law is not at all affected by the provisions of our statute in regard to the printing and distribution of our new statutes to be found in the Code, vol. 1, pp. 192–3, chap. 15, §§ 5, 6 and 7. These provisions were enacted for public convenience, and go very far towards the promulgation of the public knowledge of the existence and purport of new statutes, but certainly they were not intended to repeal by implication the long and well established general rule of law aforesaid. They require copies of the acts to be distributed among particular persons only, and if they thus exempted such persons from the effect of the legal presumption of knowledge of the existence and purport of the public statute law, they would still leave all other persons subject to such legal presumption; which would be very unjust and unequal, and could not have been intended by the framers of our Code. It would certainly be a very difficult and doubtful question to be solved in every case if it were necessary to determine that a party to be bound by a statute law had actual knowledge of its existence and its purport when he violated it according to the charge made against him.

In this case the plaintiff in error (Wimbish) had peculiar reason for obtaining information as to the enactment and purport of any statute law affecting his duty as treasurer of his county. Such laws are frequently enacted, and the treasurer of a county is a most important public officer. He can easily ascertain from the delegate of his county in the State legislature what laws are enacted affecting the duties

of his office, and such delegate would be apt to give him such information even without being requested to do so.

The court is of opinion that there is no error in the judgment of the court below, either of the circuit or county court, and that the same ought to be affirmed.

JUDGMENT AFFIRMED.