COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, McClanahan, Haley, Petty, Beales, Powell and Alston
Argued at Richmond, Virginia

RUSSELL ERNEST SMITH

OPINION BY
v.      Record No. 0364-09-1      JUDGE D. ARTHUR KELSEY
                                  NOVEMBER 23, 2010
COMMONWEALTH OF VIRGINIA

UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Walter J. Ford, Judge Designate

Steven B. Novey (Novey and Tomko Law Firm, on brief),
for appellant.

John W. Blanton, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


The trial court found Russell Ernest Smith guilty of making a "false statement" on a firearm purchase form in violation of Code § 18.2-308.2:2. On appeal, Smith admits his statement was false but argues he lacked *scienter* as a matter of law. We disagree and affirm.


I.

On appeal, we review the evidence in the "light most favorable" to the Commonwealth. Commonwealth v. Hudson, 265 Va. 505, 514, 578 S.E.2d 781, 786 (2003). This principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (emphasis and citation omitted).

Our examination of the record "is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008). In determining whether there is evidence to sustain a conviction, an

appellate court must consider "all the evidence" admitted at trial that is contained in the record. Hamilton v. Commonwealth, 279 Va. 94, 103, 688 S.E.2d 168, 173 (2010) (quoting Bolden, 275 Va. at 147, 654 S.E.2d at 586).

Smith was arrested on June 12, 2006, for felony possession of marijuana with intent to distribute. The general district court continued the case several times. Smith waived his right to a preliminary hearing and remained free on bail. Over a year later, on September 18, 2007, Smith's counsel wrote to advise Smith that the general district court had "certified" the charge "to the Grand Jury." On November 7, 2007, Smith's counsel wrote again to advise that the "trial date had been preset for January 11, 2008 at 10:00 a.m. in the Newport News Circuit Court. Your presence is required in court on that date." Counsel added a handwritten note to the letter: "Please give me a call to discuss case." A week later, on November 13, the grand jury issued an indictment against Smith.

Smith did not call his counsel as instructed. Instead, on November 15, he walked into a pawnshop and attempted to buy a .40 caliber handgun. He filled out several forms, including ATF Form 4473 issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, an arm of the United States Department of Justice. The ATF Form 4473 begins, in bold letters, with:

> WARNING: You may not receive a firearm if prohibited by Federal or State Law. The information you provide will be used to determine whether you are prohibited under law from receiving a firearm. Certain violations of the Gun Control Act are punishable by up to 10 years imprisonment and/or up to a $250,000 fine.

Various questions follow the warning, including Question 11.b, which asked: "Are you under indictment or information in any court for a *felony*, or any other crime, for which the judge could imprison you for more than one year?" (Emphasis in original.) Smith wrote "No" in response to this question. Right above Smith's signature is a certification, which reads:

> I certify that the answers to Section A are true and correct. I am aware that ATF Form 4473 contains Important Notices, Instructions, and Definitions. . . . I understand that a person who

answers "*yes*" to any of the questions 11.b through 11.k is prohibited from purchasing or receiving a firearm. . . . I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony.

The pawnshop manager refused to complete the sale after a computer background check revealed Smith's pending felony charge.

Charged with making a false statement on a firearm purchase form in violation of Code § 18.2-308.2:2, Smith took the stand in his own defense. He admitted reading ATF Form 4473 and answering its questions. At the time he filled out the form, Smith testified, he knew he had been charged with a felony and faced possible incarceration exceeding one year. He also knew he had earlier waived his right to a preliminary hearing. Smith likewise knew at the time he filled out the form that he had received letters from his counsel advising the felony charge had been certified to a grand jury and his trial had been preset for January 11, 2008.

Even so, Smith testified he had no idea what the word "indictment" meant. The prosecutor focused on this point:

> Q: So when you got to the question, are you under indictment or information in any court for a felony or any other crime for which the judge could imprison you for more than one year, *you didn't know what the word indictment meant* in Section B?
>
> A: *No.*
>
> Q: Why did you then - - no, you *didn't know what it meant*?
>
> A: No, *I did not know what it meant*.
>
>     *   *   *   *   *   *   *
>
> Q: Alright, so despite all those statements in there, you didn't know what one of the items was, you didn't know what indictment meant *and you still answered no?*
>
> A: *Right.*
>
>     *   *   *   *   *   *   *
>
> Q: And it's your testimony here in today's court that despite all of those - - despite having waived your preliminary hearing, despite having received these letters from Mr. Novey about your trial date, that *you still didn't know what an indictment was?*

A:     *No, I didn't.*

App. 39-41 (emphasis added).

In closing argument, the prosecutor argued, "throughout this form it's asking you to understand what's going on. And we're talking about the understanding of the word indictment." "Not only that," the prosecutor continued, Smith "admits it on a form where all of these warnings pervade, do not answer this form if you do not understand it, do not answer this form because it may subject you to criminal liability. In the face of all that, he answered a question no to which he didn't even understand the word indictment." After denying Smith's motion to strike, the trial court found Smith guilty of making a false statement on a firearm purchase form in violation of Code § 18.2-308.2:2(K).

## II.

On appeal, Smith argues Code § 18.2-308.2:2(K) only punishes a firearm buyer who answers "a question on the form incorrectly, *knowing* at that time that the answer is incorrect." Appellant's Br. at 6 (emphasis in original). Working from that premise, Smith claims the uncontradicted evidence (his testimony) proved he did not know what the word "indictment" meant — thus he could not have possibly known he was under indictment. We follow Smith's logic but believe it leads to a very different conclusion.

A firearm buyer violates Code § 18.2-308.2:2(K) when he "willfully and intentionally" makes a materially "false statement" on any "firearm transaction records as may be required by federal law." One such record is ATF Form 4473, which asks: "Are you under *indictment* . . . in any court for a crime punishable by imprisonment for a term exceeding one year?" Richardson v. Commonwealth, 21 Va. App. 93, 98, 462 S.E.2d 120, 123 (1995) (emphasis in original). Smith answered that question with an unqualified *no*. "The word 'no' in response to a question assuredly makes a 'statement.'" Brogan v. United States, 522 U.S. 398, 400-01 (1998). And

- 4 -

Smith's statement was false, as he was in fact under indictment at the time he filled out the ATF Form. Thus, the only issue is whether Smith made his false statement with the requisite *scienter*.

Smith sought to excuse his falsehood by claiming he did not know the meaning of the word "indictment" when he signed the ATF Form. Even if this were true, we fail to see how his excuse did anything but prove his deceit. If Smith did not know what an indictment was, he should not have *affirmatively* represented on the ATF Form that he was *not* under indictment.

Code § 18.2-308.2:2 applies to false statements on any "firearm transaction records as may be required by federal law." A knowingly false statement on the required ATF Form also violates 18 U.S.C. § 922(a)(6). The *scienter* element of the parallel federal crime is satisfied by actual knowledge of the statement's falsity as well as any "*deliberate* disregard for its truth or falsity with a *conscious* purpose to avoid learning the truth." United States v. Hester, 880 F.2d 799, 802 (4th Cir. 1989) (emphasis added). This standard represents the unanimous view of the courts that have addressed the *scienter* issue in similar contexts.[1]

Consistent with these principles, the evidence supports the trial court's finding that Smith "willfully and intentionally" made a false statement in violation of Code § 18.2-308.2:2(K). He made the untrue statement "with a bad purpose; without justifiable excuse . . . without ground for believing it is lawful . . . ." Richardson, 21 Va. App. at 99, 462 S.E.2d at 123 (citation omitted).

_____

[1] See, e.g., United States v. Whitney, 524 F.3d 134, 139 (1st Cir. 2008); United States v. Forbes, 64 F.3d 928, 934 (4th Cir. 1995); United States v. Hayden, 64 F.3d 126, 133 (3d Cir. 1995); Hester, 880 F.2d at 802; United States v. Santiago-Fraticelli, 730 F.2d 828, 831 (1st Cir. 1984); United States v. Wright, 537 F.2d 1144, 1145 (1st Cir. 1976); United States v. Thomas, 484 F.2d 909, 912-14 (6th Cir. 1973); United States v. Squires, 440 F.2d 859, 864 (2d Cir. 1971); United States v. Sanchez Ramirez, 495 F. Supp. 2d 92, 116 (Me. 2007); United States v. Blosser, 235 F. Supp. 2d 1178, 1181 (D. Kan. 2002); United States v. Kozerski, 518 F. Supp. 1082, 1093 (D.N.H. 1981); see generally Rollin M. Perkins & Ronald N. Boyce, Criminal Law 516 n.56 (3d ed. 1982) (explaining that a false statement "made with conscious indifference to whether it is true or false is deemed equivalent to an allegation known to be untrue"); see also id. at 379 (noting *scienter* exists when a person makes a false statement "quite aware that he has not the slightest notion whether it is true or not").

The ATF Form explicitly warned Smith that making a false statement constituted a crime.  See United States v. Hayden, 64 F.3d 126, 132-33 (3d Cir. 1995) (holding the ATF Form's warning of the illegality of making a false statement provided sufficient knowledge to satisfy the willfulness requirement).  Despite that warning, Smith affirmatively declared he was *not* "under indictment" while all along *knowing* he had no idea what the word "indictment" meant.  By doing so, Smith displayed a "deliberate disregard for its truth or falsity with a conscious purpose to avoid learning the truth."  Hester, 880 F.2d at 802.

## III.

Because the evidence proved Smith made a false statement on an ATF Form in violation of Code § 18.2-308.2:2(K), we affirm.

Affirmed.

Elder, J., with whom Humphreys, J., joins, concurring in the result.

I concur in the result but disagree with the majority's conclusion that the crime defined in Code § 18.2-308.2:2, which proscribes "*willfully and intentionally*" making a materially false statement on any "firearm transaction records as may be required by federal law," "*parallel[s]*" the federal crime defined in 18 U.S.C. § 922(a)(6), which proscribes "*knowingly*" making a materially false statement. (Emphases added). Thus, I find unpersuasive and inappropriate the majority's heavy reliance on cases interpreting the *scienter* required by the federal statute, particularly as such a discussion may impact future interpretation of other Virginia statutes proscribing acts done "willfully and intentionally." See generally 1 Wayne R. LaFave, Substantive Criminal Law 341 (2d ed. 2003) (noting the traditional view of criminal intent often equated doing something *intentionally* with doing something *knowingly*, but that "the modern approach is to *define separately* the mental states of knowledge and intent" (emphasis added)).

Nevertheless, I agree that the evidence is sufficient to support Smith's conviction. "To be willful, conduct 'must be knowing or intentional, rather than accidental, and be done without justifiable excuse, without ground for believing the conduct is lawful, or with a bad purpose.'" Jones v. Commonwealth, 272 Va. 692, 699, 636 S.E.2d 403, 406 (2006) (quoting Commonwealth v. Duncan, 267 Va. 377, 384, 593 S.E.2d 210, 214 (2004)). Although, per the quoted definition from Jones, conduct is willful if it is either knowing *or* intentional, Code § 18.2-308.2:2 requires that the willful conduct was also intentional. Thus, mere knowing conduct will not suffice to support a conviction under that statute. Cf. Reigert v. Commonwealth, 218 Va. 511, 518, 237 S.E.2d 803, 808 (1977) (in assessing the sufficiency of the evidence to prove larceny by false pretenses, holding that "merely showing . . . the accused knowingly stated what was false is not sufficient" and that "there must also be proof that his intent was to defraud"). Here, Smith's conduct was intentional if he engaged in it with a conscious desire, intent, or purpose that a particular result would follow.

"Intent is the purpose formed in a person's mind and may be, and frequently is, shown by circumstances. It is a state of mind which may be proved by a person's conduct or by his statements." See, e.g., Barrett v. Commonwealth, 210 Va. 153, 156, 169 S.E.2d 449, 451 (1969). In weighing a witness' testimony, including the testimony of a defendant, the trier of fact may "accept some parts as believable and reject other parts as implausible." Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). The evidence, viewed in light of these principles, supports the trial court's finding that Smith intentionally made a materially false statement on the ATF Form 4473 he completed.

Question 11.b. of the ATF Form 4473 Smith completed[2] inquired as follows: "Are you under indictment or information in any court for a *felony*, or any other crime, for which the judge could imprison you for more than one year? (*An information is a formal accusation of a crime by a prosecutor. See Definition 3.*)" Definition 3 of the form indicates that the question applies to "[a]n indictment, information, or conviction in any Federal, State, or local court." Smith admitted knowing when he completed the form on November 15, 2007, that he stood charged with a felony and that the maximum punishment he faced "[w]as . . . over a year." He also admitted that when he had previously appeared in district court and waived his right to a preliminary hearing as to that charge, a prosecutor was involved, and that he had received a letter "somewhere close to November 7, 2008," from his attorney, which informed him that his trial date had been "preset" for January 11, 2008. Finally, he testified he did not know what an indictment was but claimed that he "didn't think [he] was under indictment" when he completed the form. The trial court found that Smith "doesn't know what the word indictment means," but

---

[2] The version of the form Smith completed indicates it was "[r]evised May 2007." This version of the form contains language that has been added to question 11.b. since the Court quoted the form in Richardson v. Commonwealth, 21 Va. App. 93, 98, 462 S.E.2d 120, 123 (1995) (quoting Brooks v. Commonwealth, 19 Va. App. 563, 566, 454 S.E.2d 3, 4 (1995)), the version of the form the majority quotes in its analysis in the instant case. The May 2007 version

that "[a]s far as the *process* is concerned, . . . the evidence shows that he knew what was going on."  (Emphasis added).

Thus, the evidence, viewed in the light most favorable to the Commonwealth, supported a finding that, when Smith completed the form and answered, "No," to question 11.b., he had already appeared in lower court with a prosecutor and knew he was scheduled to be tried in "another court," "the next step up," for a felony for which he faced a maximum punishment of "over a year."  Despite knowing these things, and knowing, as the express language in question 11.b. indicated, that "[a]n information is a formal accusation of a crime by a prosecutor," (emphasis omitted), he answered, "No," to the question, "Are you under indictment or information in any court for a *felony*, or any other crime, for which the judge could imprison you for more than one year?"  Because Smith knew all these things, he could not truthfully answer "No" to question 11.b., regardless of whether he knew what an indictment was.

Thus, the evidence supported a finding that Smith acted intentionally—with a conscious desire, intent or purpose to complete the form in a manner that would enable him to purchase a firearm—without regard for whether his answers were accurate or for whether he was permitted by law to purchase a firearm.  Accordingly, I concur in the majority's ruling affirming Smith's conviction.

---

of question 11.b. includes the word "felony," which is not contained in the version of the form quoted in Richardson.