COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Friedman and Lorish
Argued at Salem, Virginia

**PUBLISHED**

CODY WAYNE COLEMAN

v.      Record No. 1528-24-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE CLIFFORD L. ATHEY, JR.
MARCH 31, 2026

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

Samantha Offutt Thames, Senior Appellate Attorney (Virginia
Indigent Defense Commission, on briefs), for appellant.

Susan Hallie Hovey-Murray, Assistant Attorney General (Jason S.
Miyares,[1] Attorney General; Anderson W. Peake, Assistant Attorney
General, on brief), for appellee.

Pursuant to the terms of a written plea agreement, Cody Wayne Coleman ("Coleman")

entered a conditional *Alford*[2] plea to making a materially false statement on a firearm form.  The

Circuit Court of Rockingham County ("trial court") subsequently convicted Coleman and sentenced

him to two years of incarceration with the entire sentence suspended.  On appeal, Coleman contends

that the trial court erred by granting the Commonwealth's motion *in limine*, prohibiting him from

"presenting his theory of defense" that his materially false statement was the product of mistake.

We agree with Coleman and reverse the judgment of the trial court.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

## II. Background[3]

Between 2018 and 2020, Coleman was convicted of misdemeanor assault and battery of a family or household member three times: twice in the Greene County Juvenile and Domestic Relations District Court and once after pleading guilty in the Circuit Court of Orange County.[4]  A provision in Coleman's Orange County plea agreement confirmed that by signing the agreement, Coleman understood that "convictions can lead to a number of collateral consequences, including but not limited to . . . the loss of the right to possess firearms or other weapons."

On March 29, 2023, Coleman attempted to purchase a 9mm handgun from Liberty Arms, LLC ("Liberty Arms"), a gun dealership located in Harrisonburg, Virginia.  Before being permitted to purchase the handgun, Coleman was required to complete ATF Form 4473, which is "issued by the Federal Government and required as part of a firearms transaction record."  ATF Form 4473 required applicants to respond to the question: "Have you ever been convicted in any court of a misdemeanor crime of domestic violence . . . ?"  Coleman answered "No" to that question.

Upon receiving the completed ATF Form 4473 from Coleman, Liberty Arms "confirmed his identity" and "ran it through the Virginia State Police for approval to purchase the firearm."  Coleman's application was subsequently "denied for having prior convictions for domestic assault and battery, a misdemeanor crime of domestic violence."  As a result, on February 20, 2024, Coleman was indicted on one count of making a materially false statement on a firearm form in violation of Code § 18.2-308.2:2.  His jury trial was scheduled to begin on September 10, 2024.

---

[3] "On appellate review of the admissibility of evidence, we view the evidence in the light most favorable to the Commonwealth, the party who prevailed below." *Hicks v. Commonwealth*, 71 Va. App. 255, 261 n.2 (2019).

[4] Coleman was originally charged with felony assault and battery of a family or household member.  *See* Code § 18.2-57.2(B).  Pursuant to the written plea agreement, the charge was amended to misdemeanor assault and battery of a family or household member.

The day before trial, the Commonwealth filed a motion *in limine* "to prohibit [Coleman], his attorney, and all witnesses from stating or arguing that the defendant was not aware that he was legally prohibited from possessing a firearm." In its motion, the Commonwealth argued that because "ignorance of the law is not an excuse to violate the law," "any statement or argument that [Coleman] was unaware that it was against the law for him to possess a firearm would be improper . . . and that any attempt to do so would be done to simply confuse the jury."

On the morning of September 10, 2024, the trial court heard oral argument on the Commonwealth's motion. Coleman contended that he was not seeking "to present the defense of ignorance of the law," noting that in fact, Coleman planned "to testify that he was aware when he filled out the firearm consent form that making a false statement deliberately on that form was a crime." Instead, Coleman planned to argue "that he did not know that his prior convictions were classified as crimes of domestic violence," which he asserted was either "an issue of a mistake of fact or a mistake of the application of law to fact." While conceding that he was aware that he had been convicted of assault and battery of a family or household member, Coleman contended that because a false statement must be made "willfully and intentionally" to violate the statute, "[h]e had to have full knowledge that the statement that he was making was in fact a lie." Coleman further argued that he was not aware that assault and battery of a family or household member was classified "as a crime of domestic violence"; rather, "he thought that crime of domestic violence was a specific charge, not a class of offenses," because the term "crime of domestic violence" did not appear on his prior warrants. He also asserted that if his answer on the form was incorrect but he did not know it was incorrect, he could not have "made a willful and intentional false statement." Finally, Coleman argued that if the Commonwealth's position prevailed, neither he nor any other future defendant would be able to present a defense to the mens rea element of the crime.

In response, the Commonwealth contended that "[t]here are situations . . . where someone may still be able to present a defense to the mens rea element. This is just simply not one of them." The Commonwealth noted that by signing his Orange County plea agreement, Coleman acknowledged that his conviction would prevent him from possessing a firearm. Thus, the Commonwealth asserted, Coleman's "ignorance of the law, or his choosing to be ignorant . . . in the face of multiple convictions and a signed plea agreement where he said he understood it fully and completely," would justify the trial court's decision to "prevent any testimony regarding that element of this case."

Following the completion of oral argument, the trial court opined that Coleman's mistake was distinguishable from the mistake alleged in *Canaday v. Commonwealth*, No. 0789-22-1, 2023 Va. App. LEXIS 745 (Nov. 8, 2023).[5] Concluding that the mistake alleged in *Canaday* was a mistake of fact and therefore admissible, while Coleman's purported mistake was one of law and not admissible, the trial court granted the Commonwealth's motion *in limine*.

After consulting with his attorney, Coleman entered an *Alford* plea with the consent of the Commonwealth, expressly preserving his right to appeal the trial court's ruling on the Commonwealth's motion *in limine*. The Commonwealth's proffer of evidence in support of the *Alford* plea was consistent with the facts set forth above and included a copy of the first three pages of the ATF Form 4473 that Coleman completed.[6] Coleman further proffered that he would have

---

[5] In *Canaday*, the defendant argued on appeal "that although he 'knew that he had been charged three times in the past in juvenile court with misdemeanor assault and battery,' he 'believed those convictions had ultimately been dismissed rather than ended in convictions.'" *Id.*, slip op. at 4, 2023 Va. App. LEXIS 745, at *5.

[6] The Commonwealth also proffered that had the case gone to trial, it would have introduced the original copy of ATF Form 4473 in its entirety, "including the descriptions for each of the questions, should a person have a question regarding one of the questions there that's listed." Nevertheless, the Commonwealth did not proffer the content of said descriptions, and only the first three pages of ATF Form 4473 are included in the record.

testified that "he was not aware when he was reading the form and attempting to answer the questions, that his prior convictions of assault and battery on a family or household member were equivalent to a conviction for domestic violence."  He also would have testified that he disclosed his prior convictions to the employee of Liberty Arms who was handling the sale of the firearm and asked the employee whether he had to answer "Yes" or "No" to the specific question on the form.  Coleman would have explained that the employee would not give him an answer, instead responding, "I cannot give you legal advice, just do your best," or something similar.  Further, Coleman proffered that he would have testified that he also asked his friend, Dakota Byrum ("Byrum"), who was in the gun shop with him that day, whether he had to answer "Yes" or "No" to the question but Byrum "could not give any guidance."  Lastly, Coleman would have testified that he answered "No" to the question, and he would have called Byrum to testify to corroborate his testimony regarding the events that transpired at Liberty Arms that day.

After completing the plea colloquy, the trial court accepted Coleman's *Alford* plea and found him guilty before sentencing him to a suspended sentence of two years' incarceration in accordance with the terms of his written plea agreement.  Coleman appealed.

## II. ANALYSIS

### A. *Standard of Review*

"On appeal, a court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *Drexel v. Commonwealth*, 80 Va. App. 720, 739 (2024).  "We owe no deference, however, to a circuit court's resolution of questions of law." *Appian Corp. v. Pegasystems, Inc.*, ___ Va. ___, ___ (2026).

### B. *The trial court erred in granting the Commonwealth's motion* in limine.

On appeal, Coleman contends that the trial court "erred by granting the Commonwealth's motion in limine, incorrectly preventing [him] from presenting his theory of defense."  In support,

Coleman asserts that by precluding him from introducing evidence that he did not know that his prior convictions were misdemeanor crimes of domestic violence, the trial court excluded relevant evidence of his intent that should have been presented to the jury. We agree.

Coleman was indicted for violating Code § 18.2-308.2:2(K), which provides:

> Any person willfully and intentionally making a materially false statement on the consent form required in subsection B or C or on such firearm transaction records as may be required by federal law shall be guilty of a Class 5 felony.

There is no dispute that Coleman, by affirming that he had never been convicted of a misdemeanor crime of domestic violence on ATF Form 4473, made a materially false statement that is proscribed by Code § 18.2-308.2:2(K). There is also no dispute that assault and battery on a family or household member under Code § 18.2-57.2 is a misdemeanor crime of domestic violence, *see Marshall v. Commonwealth*, 69 Va. App. 648, 658 (2019), nor is it disputed that Coleman was aware of his multiple convictions for assault and battery on a family or household member at the time he made the false statement on the form. Rather, had the case proceeded to trial, the disputed element of the offense would have been whether Coleman acted "willfully and intentionally." Thus, evidence tending to prove that Coleman did *or did not* act willfully and intentionally would have been relevant and material—and therefore admissible at trial. *Appian Corp.*, ___ Va. at ___ n.17 ("Subject to certain exceptions, relevant evidence is admissible; irrelevant evidence is inadmissible."); *see Commonwealth v. Proffitt*, 292 Va. 626, 634-35 (2016); *Kenner v. Commonwealth*, 299 Va. 414, 425-26 (2021); *Neeley v. Commonwealth*, 17 Va. App. 349, 356 (1993); *see also* Va. R. Evid. 2:401; Va. R. Evid. 2:402(a).

The question presented in this appeal requires us to determine whether the trial court erroneously prohibited the introduction of evidence tending to prove that Coleman did not intend to lie on ATF Form 4473. Whereas Coleman asserts that he should have been allowed to argue that he misunderstood the nature of his prior convictions, the Commonwealth submits that Coleman was

attempting to set forth an ignorance-of-the-law defense that is "no defense at all."[7] Coleman has the better argument.

Initially, we agree with the Commonwealth that "ignorance of the law is no excuse" in a criminal prosecution. *Miller v. Commonwealth*, 25 Va. App. 727, 731 (1997) (quoting *People v. Studifin*, 504 N.Y.S.2d 608, 609 (N.Y. Sup. Ct. 1986)); *see also Wimbish v. Commonwealth*, 75 Va. 839, 844-45 (1880) ("The law is assumed to be known by every citizen from the time fixed for it to go into operation; *ignorantia legis neminem excusat*."). Absent special circumstances, which are not present here, a criminal defendant simply cannot assert that he did not know that his conduct was proscribed by law and be relieved from prosecution.[8] *See Miller*, 25 Va. App. at 731-32; *Wimbish*, 75 Va. at 844 ("[I]gnorance of the existence of . . . a statute, or of its terms, is not a legal excuse to any such persons for not complying therewith or being bound thereby.").

But ignorance of the law is not always a noncognizable defense. Because a "defendant cannot be convicted when it is shown that he does not have the mental state required by law for commission of that particular offense," ignorance of the law or a mistake of law "is a defense when it negatives the existence of a mental state essential to the crime charged." 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.6(a) (3d ed. 2025) (footnote omitted). Quite different from "the situation in which the defendant is unaware of the existence of a statute proscribing his conduct, . . . a mistaken impression concerning the legal effect of [a] collateral matter . . . that . . . results in [a defendant] misunderstanding the full significance of his conduct" may negate the

---

[7] At oral argument, the Commonwealth took the position that evidence of Coleman's alleged mistake was "inadmissible as a matter of law" and that Coleman's defense was not a cognizable defense "at all."

[8] In *Miller*, this Court recognized a limited exception to the rule that ignorance of the law is no excuse, grounded in due process, "where a defendant has reasonably relied upon affirmative assurances that certain conduct is lawful, when those assurances are given by a public officer or body charged by law with responsibility for defining permissible conduct with respect to the offense at issue." 25 Va. App. at 735.

culpable mental state required for a conviction. *Id.*; *see Rehaif v. United States*, 588 U.S. 225, 234-35 (2019); *see also* Ronald J. Bacigal & Corinna Barrett Lain, *Virginia Practice Series: Criminal Offenses and Defenses* 416 (2025) ("If [a] defendant's ignorance or mistake about [a] non-penal law causes him to be mistaken as to a fact relevant to the criminal charge, he may have a defense."). In other words, the culpable mental state required for a conviction may be negated by a defendant's incorrect, mistaken resolution of a "'collateral question' of law." *Rehaif*, 588 U.S. at 235. To ascertain whether an ignorance-of-the-law or mistake-of-law defense is cognizable, we must "identif[y] the mental state or states required for the crime, and then inquire[] whether that mental state can exist in light of the defendant's [purported] ignorance or mistake of . . . law." LaFave, *supra*, § 5.6(b).

Turning to the text of the statute, Code § 18.2-308.2:2(K) requires that a materially false statement be made "willfully *and intentionally*." Code § 18.2-308.2:2(K) (emphasis added). By employing that conjunctive phrase, "the General Assembly intended to impose upon the Commonwealth a very strict standard of *scienter* in prosecutions for violations of Code § 18.2-308.2:2(K)." *Smith v. Commonwealth*, 282 Va. 449, 455 (2011).[9] A defendant must have more than a "deliberate disregard for [the statement's] truth or falsity with a conscious purpose to

---

[9] The scienter element of the federal cognate statute is "knowingly." 18 U.S.C. § 922(a)(6); *see Smith*, 282 Va. at 455 n.2. In *Smith*, our Supreme Court rejected this Court's en banc application of "the federal standard which holds . . . that 'the scienter element is satisfied by actual knowledge of the statement's falsity as well as any 'deliberate disregard for its truth or falsity with a conscious purpose to avoid learning the truth.'" 282 Va. at 455 (quoting *Smith v. Commonwealth*, 57 Va. App. 319, 325 (2010) (en banc)). Because "Congress did not choose to adopt the stricter 'willfully and intentionally' standard contained in the Virginia statute," *id.* at 455 n.2, we find federal caselaw applying the "federal standard" unpersuasive to the extent it is inconsistent with the "strict *scienter* requirement the General Assembly has adopted in Code § 18.2-308.2:2(K)," *id.* at 455; *United States v. Hester*, 880 F.2d 799, 802 (4th Cir. 1989) (holding that "knowingly" does not require proof of "'actual' or 'positive' knowledge"); *cf. United States v. Minor*, 165 F.4th 616, 627 (1st Cir. 2026) ("[T]he requirement that a defendant know that he bore the status of a person convicted of a misdemeanor crime of domestic violence, for purposes of §§ 924(a)(2) and 922(g)(9), can be established by knowledge of the facts that constitute the offense labeled a 'misdemeanor crime of domestic violence.'").

avoid learning the truth." *Id.* (quoting *Smith v. Commonwealth*, 57 Va. App. 319, 325 (2010) (en banc)). The Commonwealth must prove "beyond a reasonable doubt, as an element of the crime, that the defendant had actual knowledge that his statement was false when he made it. There must be evidence to support a finding that he knew the truth but nevertheless intended to, and did, utter a falsehood." *Id.* "[A]ctual knowledge and intent are factual determinations to be decided by the trier of fact." *Parham v. Commonwealth*, 64 Va. App. 560, 566 (2015).

To *intentionally* lie presupposes knowledge of the truth. Hence, if a defendant is mistaken as to the resolution of a collateral question of law, which in turn causes him to utter a falsehood, he does not possess the mental state necessary to violate Code § 18.2-308.2:2(K). *See Smith*, 282 Va. at 455. A contrary conclusion would result in the statute criminalizing a mere mistake when it does not even criminalize making a materially false statement with "deliberate disregard for [the statement's] truth or falsity with a conscious purpose to avoid learning the truth." *Id.* (quoting *Smith*, 57 Va. App. at 325). Given the heightened scienter requirement, when a defendant alleges that he has made a mistake in resolving a collateral question of law—such as whether a prior conviction is classified by law as a misdemeanor crime of domestic violence—evidence of his mistake is admissible in a prosecution for violation of Code § 18.2-308.2:2(K).

Because of the "willful and intentional" scienter requirement in Code § 18.2-308.2:2(K), there is effectively no distinction between a materially false statement induced by a mistake of fact and a materially false statement induced by a mistaken impression of a collateral issue of law.[10] *See* Bacigal & Lain, *supra*, at 416 (stating that a criminal defendant's plea of "ignorance

---

[10] Similarly, a defendant being prosecuted for criminal trespass, which is "a willful trespass," may raise a bona fide claim of right defense to "negate[] criminal intent." *Reed v. Commonwealth*, 6 Va. App. 65, 69-71 (1988). And this bona fide claim may result from a mistake of fact, *see Lawson v. Commonwealth*, 35 Va. App. 610, 616-17 (2001) (concluding that a hunter who entered the land of another "mistakenly thought he was on [an adjoining property]" upon which "he had permission to be," thereby entering the land "under a *bona fide* claim of right"), or a mistake of law, *see Wise v. Commonwealth*, 98 Va. 837, 838-39 (1900) (holding

or mistake about [a] non-penal law caus[ing] him to be mistaken as to a fact relevant to the criminal charge" operates as a mistake-of-fact defense). To illustrate, whether a criminal defendant knows the meaning of a word and whether a defendant knows the *legal* meaning of a word are very closely related questions. The resolution of the former question depends on the defendant's lexicon, whereas the resolution of the latter is dependent on the defendant's lexicon *and* legal education. But importantly, the resolution of each question requires an inquiry into the defendant's mind—a determination of whether the defendant *knows* the word's respective meanings—which is the province of a fact finder. *See Parham*, 64 Va. App. at 566.

For example, in *Parham*, the appellant challenged the sufficiency of the evidence to sustain his conviction for making a materially false statement on a firearm form, arguing that "the Commonwealth failed to prove that he was aware that he was under indictment at the time that he completed the form." 64 Va. App. at 562. At a bench trial, the appellant testified and argued that he lacked understanding of the meaning of "indictment." *Id.* at 563-64. After weighing the evidence and argument, the trial court convicted him of the offense. *Id.* at 564. On appeal, we affirmed the conviction, in part because "the witnesses' testimony, combined with the evidence of the appellant's court appearances, *provided a sufficient basis for the trial court to infer that he knew the meaning of the term 'indictment' at the time he completed the federal firearm transaction form*." *Id.* at 568 (emphasis added).

In *Parham*, the appellant asserted ignorance of the meaning of "indictment." But he was not admonished that doing so amounted to an impermissible mistake-of-law defense; rather, he

_____

that, where a defendant attempted to establish a claim of right defense to a prosecution for trespass, evidence of a verbal contract in the chain of title was admissible as "bear[ing] upon the *bona fides* of [the] claim of right asserted" although it was legally ineffective to "pass[] title"), so long as the defendant has "a good-faith belief, supported by objective facts that, if true, rise to the level of being an authorization to enter or remain on the premises," *Commonwealth v. Kartozia*, 304 Va. 321, 332-33 (2025).

- 10 -

was permitted to present his defense by introducing evidence and arguing that he did not understand the meaning of the word "indictment." This is because the Commonwealth was required to prove that the appellant had "actual knowledge that his statement was false when he made it," *Smith*, 282 Va. at 455, and if one does not have actual knowledge that they are under indictment due to a misunderstanding of what it means to be under indictment, there can be no conviction under Code § 18.2-308.2:2(K). A bona fide mistaken interpretation of a word, even a word with an established legal connotation, is a valid defense, which may negate the heightened scienter requirement in Code § 18.2-308.2:2(K)—if credited by the fact finder.[11]

By contrast, and illustrating when ignorance or a mistake regarding the resolution of a collateral question of law is *not* a valid defense, a felon charged with possessing a firearm as a convicted felon cannot argue that he did not know he was a felon. Bacigal & Lain, *supra*, at 417. Indeed, Code § 18.2-308.2, which reads, in relevant part, "It shall be unlawful for . . . any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport any firearm," Code § 18.2-308.2(A), does not require an accused to have knowledge that he "has been convicted of a felony." *See Harris v. Howard*, 304 Va. 177, 185 (2025); *Branch v. Commonwealth*, 42 Va. App. 665, 669-70 (2004) ("Neither Code § 18.2-308.2, nor its related statutes, contain a *scienter* or *mens rea* element for a conviction under that statute."). This is why, in *Turner v. Commonwealth*, 38 Va. App. 851 (2002), we held that the appellant's "misunderstanding . . . of the import of [his] . . . conviction" amounted to an impermissible ignorance-of-the-law defense. *Id.* at 858. To be sure, the appellant's erroneous assumption that he had not been convicted of a felony for purposes of Code § 18.2-308.2(A), *see id.* at 855-58, was "a mistaken impression concerning the legal effect of [a] collateral matter," LaFave, *supra*, § 5.6(a). But, as a matter of law, that mistaken

---

[11] Whether the defense is permissible is a different inquiry than whether it is credible. Although a criminal defendant may be permitted to raise this defense, a fact finder may still reject it. *See Parham*, 64 Va. App. at 568.

impression could not have negated the culpable state required for a conviction because knowledge that one "has been convicted of a felony" is not an element of the offense for which he was convicted. Code § 18.2-308.2(A); *see Branch*, 42 Va. App. at 669.

Not so here. Code § 18.2-308.2:2(K) requires a person to have knowledge that he was convicted of a misdemeanor crime of domestic violence and intentionally state otherwise. *See Smith*, 282 Va. at 455. Coleman was aware that lying on ATF Form 4473 was proscribed by statute. His alleged unawareness of the legal effect of his convictions bears directly on whether he had the requisite mental state for the elements of the offense charged, i.e., whether he willfully and intentionally lied on ATF Form 4473.

We are also unpersuaded that the theories advanced by the Commonwealth at oral argument preclude Coleman from advancing his proffered defense. The Commonwealth posited that Coleman, by proffering evidence that he was unsure of his answer before he signed ATF Form 4473, willfully and intentionally made a materially false statement by affirming that his answers on said form were "true, accurate, and complete." But Coleman's allegedly mistaken characterization of his prior offenses equally affects his conclusion that he did not have a prior conviction for a misdemeanor crime of domestic violence *and* his ultimate conclusion that his answers were "true, accurate, and complete." The Commonwealth's second argument—that Coleman willfully and intentionally made a materially false statement by affirming that he had "read and underst[oo]d the Notices, Instructions, and Definitions on ATF Form 4473"—fares no better. Other than the bare existence of the admittedly false statement, this theory only finds support in Coleman's proffer that he expressed some level of uncertainty *before* making said statement. Hence, under either of these theories, Coleman's intent is still the central inquiry, and his proffered defense remains relevant for determining whether he "had actual knowledge that his statement[s] w[ere] false when he made [them]." *Smith*, 282 Va. at 455.

"Intent is the purpose formed in a person's mind which may, *and often must*, be inferred from the facts and circumstances in a particular case." *Commonwealth v. Perkins*, 295 Va. 323, 330 (2018) (quoting *Burton v. Commonwealth*, 281 Va. 622, 626-27 (2011)). Whether an accused intends to make a false statement is a question for the fact finder. *See Parham*, 64 Va. App. at 566. Here, the trial court prevented Coleman from presenting relevant evidence of his intent to the finder of fact under the premise that it was inadmissible evidence of a mistake of law. For the reasons set forth above, this was error. *See Appian Corp.*, ___ Va. at ___ ("[A] circuit court abuses its discretion when it erroneously concludes that admissible, relevant evidence is irrelevant."). We therefore hold that the trial court abused its discretion by preventing Coleman from presenting his defense that he did not know that his prior convictions for assault and battery on a family or household member were convictions for misdemeanor crimes of domestic violence.[12]

III. CONCLUSION

For the foregoing reasons, the trial court abused its discretion by preventing Coleman from presenting evidence that he did not know that his prior convictions for assault and battery on a family or household member qualified as misdemeanor crimes of domestic violence, as such evidence was relevant to prove whether Coleman possessed the requisite mental state to be found guilty of violating Code § 18.2-308.2:2(K). We therefore reverse the judgment of the trial court and

---

[12] Coleman does not argue that the evidence was insufficient to support his conviction. He expressly requests that we "reverse[] and remand[] for a new trial wherein [he] may present his defense to a fact-finder." Hence, we reverse and remand so that Coleman may be allowed to withdraw his plea. *See* Code § 19.2-254 ("With the approval of the court and the consent of the Commonwealth, a defendant may enter a conditional plea of guilty in a misdemeanor or felony case in circuit court, reserving the right, on appeal from the judgment, to a review of the adverse determination of any specified pretrial motion. If the defendant prevails on appeal, he shall be allowed to withdraw his plea.").

remand the case for further proceedings consistent with this opinion, including a new trial if the

Commonwealth so chooses.

*Reversed and remanded.*