PRESENT:  Goodwyn, C.J., Kelsey, McCullough, Chafin, Russell, and Mann, JJ.

KEVIN THOMAS KING

                                      OPINION BY

v.  Record No. 230483             JUSTICE WESLEY G. RUSSELL, JR.
                                       OCTOBER 24, 2024

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Following a bench trial, Kevin Thomas King was convicted of felony unauthorized use of another's vehicle pursuant to Code § 18.2-102.  King challenges his conviction, arguing that the Commonwealth's evidence failed to establish that he took the vehicle "without the consent of the owner" as required by the statute.  For the reasons that follow, we affirm the judgment of the Court of Appeals.

## I.  BACKGROUND

On December 31, 2020, Isaac Robertson, Jr. hosted a gathering at his home.  King was among those in attendance.  During the course of the New Year's Eve party, King asked Robertson if he could drive Robertson's Volkswagen Jetta, which was parked under the carport just outside of the house.  Robertson said no and never gave King permission to drive the car.  Robertson went to sleep between 12:30 and 1:00 a.m. and awoke to find that his car was missing.

While Robertson slept, King took Robertson's car and was involved in an accident.  Officer Matherly, responding to the scene of the accident, found King lying unconscious and inebriated in the street near Robertson's Jetta, which had sustained "heavy front end damage."  A few days after the crash, a towing company returned the car to Robertson's house.  King later told Robertson that "he took the car and he's willing to pay for whatever he needs to."

At trial, Robertson was asked on direct examination "did [he] own [the Jetta] on December 31st, 2020 and January 1st, 2021?"  He responded with an unequivocal "Yes sir."  On

cross-examination, he was asked if, on the date in question, he was the "registered owner of the vehicle," i.e., whether his ownership interest in the vehicle had been registered with the Virginia Department of Motor Vehicles ("DMV"). Robertson responded that he was not the registered owner. Under further questioning, he testified that his brother had given him the car in 2020 and that, because he "didn't have the correct stuff to go on the car at the time[,]" he had the car pulled to his house on a "trailer[.]" He explained that his failure to register his ownership interest with DMV resulted from his driver's license being suspended.[1] Finally, Robertson confirmed that the car was returned to him after the accident.

King moved to strike the evidence.[2] He noted that Code § 18.2-102 required the Commonwealth to prove that he took the car "without the consent of the owner[.]" He asserted that Robertson's admission that he did not register the car with DMV when he was given the car meant that, although Robertson possessed the car, he was not "the registered owner" of the car, and therefore, Robertson was not the owner for purposes of Code § 18.2-102. He reasoned that, because the Commonwealth failed to introduce evidence that the person listed in DMV records as the owner had not given him permission to take the car, the Commonwealth had failed to establish that element of the offense.

---

[1] Code § 46.2-412 provides that "[e]very suspension or revocation shall remain in effect and the Commissioner shall not issue any new or renewal license or register in his name any motor vehicle, until permitted under the provisions of this chapter." *See also* Code § 46.2-391.1 (providing that when the Commissioner has suspended or revoked a person's driver's license, "the Commissioner shall also suspend all of the registration certificates and license plates issued for any motor vehicles registered solely in the name of such person *and shall not issue any registration certificate or license plate for any other vehicle that such person seeks to register solely in his name.*" (Emphasis added.)

[2] King initially moved to strike the evidence at the close of the Commonwealth's evidence. After the trial court denied the motion, King elected not to present any evidence and renewed his motion to strike.

The trial court denied the motions to strike. The trial court concluded that Robertson had been given the car by his brother and that when "[s]omebody gives you something it's yours." After noting that being listed in DMV records as the owner of a car is not the same as being the actual owner of that car, the circuit court stated that it was "satisfied that the evidence proves beyond a reasonable doubt that Mr. Robertson was the owner of the vehicle" and that he had "not give[n] consent" for King to take the vehicle. As a result, the trial court convicted King of unauthorized use of a vehicle in violation of Code § 18.2-102.

King appealed to the Court of Appeals. He asserted that "[t]he trial court erred by finding there was sufficient evidence to convict [him] of unauthorized use because no evidence was presented that [he] did not have the owner's permission to use the vehicle." Specifically, he repeated his argument from the trial court that, because Robertson did not seek a certificate of title from DMV or otherwise register the vehicle with DMV, he could not be considered the owner of the vehicle for the purpose of Code § 18.2-102. To support his argument, he noted that, like Code § 18.2-102, statutes in Title 46.2 regarding registration and obtaining a certificate of title also used the word "owner," and therefore, to be an owner of a vehicle requires a person to have registered the vehicle and to have received a certificate of title from DMV.

Rejecting this argument, the Court of Appeals affirmed the judgment of the trial court. In doing so, the Court of Appeals recognized that the concept of an "owner" of a vehicle is, as King argued, used in various places in Title 46.2 and was defined by the General Assembly in Code § 46.2-100; however, the Court of Appeals also recognized that the General Assembly "restrict[ed] that definition, stating that the definition applies" only to code sections found in Title 46.2, and thus, does not apply to prosecutions "under Code § 18.2-102, which is found in a

3

different title of the Code." *King v. Commonwealth*, Record No. 0484-22-3, 2023 Va. App. LEXIS 382, at *4 (June 13, 2023).

Effectively applying a plain meaning definition of "owner" for the purpose of Code § 18.2-102, the Court of Appeals concluded that the "evidence supports the trial court's finding that Robertson owned the car." *Id.* at *5. Specifically, the Court of Appeals noted that Robertson's testimony was "undisputed" that his brother had transferred ownership of the car to Robertson when he gave him the car and that Robertson had sufficiently explained why he had not registered the car with, or sought a certificate of title from, DMV. *Id.* Finally, the Court of Appeals rejected any argument that its prior published decision in *McDuffie v. Commonwealth*, 49 Va. App. 170 (2006), compelled reversal, rejecting the contention that *McDuffie* had created a *per se* rule that "owner" in Code § 18.2-102 necessarily meant the owner of the vehicle reflected in DMV records. *King*, at *5-6.

King sought review in this Court. He contends that "[t]he Court of Appeals erred when it held that Mr. Robertson was the owner of the vehicle." Specifically, he argues that the "'[o]wner' of a vehicle, for purposes of the unauthorized use statute, is the person with legal title" and that Robertson's testimony about his failure to register the vehicle with DMV rendered the evidence insufficient for a rational factfinder to conclude he was the legal owner of the vehicle.

In response, the Commonwealth contends that, like other crimes that involve taking property without the consent of the "owner," the elements of Code § 18.2-102 may be satisfied even when the property is taken from someone with less than absolute title in the property. *See* Code § 19.2-284; *Latham v. Commonwealth*, 184 Va. 934, 940 (1946) (holding that for "'offenses in which the gist and essence of the crime charged is the taking and carrying away of

the personal goods of another without the consent of the owner, it is sufficient that the goods alleged to have been stolen are . . . either the absolute or the special property of the alleged owner. . . . [T]he allegation of ownership . . . is sustained by the proof of any legal interest or special ownership which may be less than absolute title to the property.'") (quoting 2 Francis Wharton, Wharton's Criminal Evidence 1879-80 (11th ed., Lawyers Co-Op Publ'g Co. 1935)). Alternatively, the Commonwealth asserts that Robertson's testimony that he owned the car was sufficient to establish he had title to the car and that "King incorrectly conflates Robertson's acknowledgement that he was not 'the registered owner' with Robertson not having legal title of the vehicle."

## II. ANALYSIS

### A. Standard of review

When faced with "a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the prevailing party, including any inferences the factfinder may reasonably have drawn from the facts proved." *Smith v. Commonwealth*, 282 Va. 449, 453 (2011). Thus, we owe deference to the trial court's factual finding that Robertson was the owner of the Jetta because his brother had given it to him and may only reverse that finding if "it is plainly wrong or without evidence to support it." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024) (internal quotation marks and citations omitted). However, whether that factual conclusion is sufficient to satisfy the ownership element in Code § 18.2-102 requires that we "construe statutory language[,]" which "presents a pure question of law [that] we consider de novo on appeal." *Smith*, 282 Va. at 453-54.

5

B.  "[O]wner" as used in Code § 18.2-102

In advancing their respective arguments on appeal, King and the Commonwealth offer very different interpretations of the word "owner" as used in Code § 18.2-102.  King contends that an "'[o]wner' of a vehicle, for purposes of the unauthorized use statute, is the person with legal title," and the Commonwealth contends that, for the purpose of a prosecution under Code § 18.2-102, "the allegation of ownership is sustained by proof of any legal interest in the property and may be less than absolute title."

Given our charge to resolve cases "on the best and narrowest grounds available to us, favoring dispositions tailored to the facts before us over broad pronouncements of law[,]" *Hannah v. Commonwealth*, 303 Va. 106, 121 (2024), and the specific facts of this case, we need not resolve the definitional dispute to resolve this appeal.  For the reasons that follow, the evidence was sufficient to allow a rational factfinder to conclude that Robertson was the owner of the vehicle even if we assume that the more stringent definition advanced by King applies.  Accordingly, accepting King's proffered definition of an "owner" for the purpose of resolving *only* this appeal, we leave for another case a determination of whether a person with less than full title to a vehicle can be its "owner" for the purpose of a prosecution under Code § 18.2-102.

C.  Robertson's testimony was sufficient to establish he owned the Jetta

Central to King's argument is his position that inherent in the concept of being an "owner" of personal property is that a person holds title to the property.[3]  In the context of

_____

[3] At various points on brief, King refers to ownership requiring that a person possess "title" to the object and at other points refers to the person needing "legal title."  Traditionally, "legal" is used to modify title to distinguish it from the concept of "equitable title."  *See* Black's Law Dictionary 1794 (12th ed. 2024) (defining "legal title" as "[a] title that evidences apparent ownership but does not necessarily signify full or complete title or a beneficial interest" and defining "equitable title" as "[a] title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title").  We do not understand King to be drawing

6

personal property, title means "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property; the legal link between a person who owns property and the property itself[.]" Black's Law Dictionary 1793 (12th ed. 2024). Defining title in this manner and accepting King's proffered definition of owner as correct for the purpose of resolving this appeal, the evidence at trial was sufficient to allow a reasonable factfinder to conclude that Robertson possessed title to the car.

There is no dispute that Robertson had possession and custody of the car and that he exercised dominion and control over it. After all, the car was kept by Robertson at his house and, when King sought permission to borrow the car, he asked Robertson. Furthermore, after authorities investigated the crash of the vehicle, the car was returned to Robertson at Robertson's house. All of these facts support the factfinder's conclusion that Robertson was, in fact, the owner of the car.

More importantly, testimony established that Robertson was the owner of the vehicle. When asked whether he owned the car, Robertson unequivocally testified that he did. Once the factfinder credited this statement, King's argument collapses under its own weight. If, as King contends, having valid title is inherent in the concept of ownership, it also is inherent in Robertson's unequivocal testimony that he owned the car. Thus, the testimony, once believed, provided a sufficient basis for the factfinder to conclude that Robertson owned the car.

The factfinder, however, was not left to base its conclusion on a naked claim of ownership by Robertson because Robertson actually explained how he came to own the vehicle. When asked, he testified his brother gave him the car. The common law long has recognized

such distinctions, and therefore, read his use of both the phrases "legal title" and "title" to mean what is generally referred to as either good or valid title, i.e., "the legal right to control and dispose of property[.]" *Id.* at 1793.

that personal property may be transferred by gift. *See Knop v. Knop*, 297 Va. 553, 559 (2019); *Taylor v. Smith*, 199 Va. 871, 874 (1958). Here, the trial court sitting as factfinder made an express finding that Robertson had received the car by gift, and thus, was the owner of the car. Thus, even under King's proffered interpretation of "owner" as used in Code § 18.2-102, the Commonwealth established that Robertson was the car's owner.

D. Robertson's failure to register his ownership interest with DMV does not require a different conclusion

Faced with the foregoing, King argues that the factfinder could not conclude that Robertson owned the car because he testified that he did not register his ownership interest in the car with DMV, and thus, he did not receive a certificate of title from DMV. This argument fails because it erroneously conflates the legal concept of title with the *certificate* of title that DMV issues when an owner of a motor vehicle registers that vehicle with DMV.

It is true that Virginia law requires that, before a motor vehicle legally can be driven on a Virginia highway, the owner must register it with DMV and "obtain from [DMV] the registration card and certificate of title for the vehicle." Code § 46.2-600. Furthermore, when a person acquires a vehicle, he "shall write his name and address in ink on the certificate of title" received from the prior owner "and, . . . within thirty days forward the certificate to [DMV] with an application for the registration of the motor vehicle, trailer, or semitrailer and for a certificate of title." Code § 46.2-630.

It is undisputed that Robertson failed to comply with the referenced registration statutes, and therefore, had not received a certificate of title from DMV. It does not follow, however, that he did not possess valid title to the vehicle. As we previously have recognized in another context, Robertson's failure "to apply for a new certificate of title within the time period required by law . . . might subject him to criminal liability" but "does not void the transfer of ownership

8

of" the Jetta to Robertson from his brother. *Allstate Ins. Co. v. Atlanta Cas. Co.*, 260 Va. 148, 156 (2000). Thus, consistent with common law concepts of personal property transfer and our prior cases, the failure of Robertson to comply with the registration statutes did not divest him of his ownership of the Jetta.

The conclusion that a DMV-issued certificate of title is not a necessary component of establishing ownership for the purpose of Code § 18.2-102 also finds support in the very statutes that require registration with and applying for a certificate of title from DMV. As noted above, Code § 46.2-600 requires that "every person who owns a motor vehicle" must register that vehicle and seek a certificate of title from DMV "before it is operated on any highway in the Commonwealth[.]" Because only an owner of a vehicle is required to obtain from DMV a certificate of title, the ownership interest necessarily exists prior to the issuance of the certificate of title. Additionally, Code § 46.2-630 gives a person who has acquired title to a motor vehicle thirty days to apply to DMV for a certificate of title. If obtaining a certificate of title were the *sine qua non* of ownership, a motor vehicle could legally lack an owner for thirty days after its purchase. *See also* Code § 46.2-631 (exempting car dealers from the registration and certificate of title requirements in certain circumstances when they acquire a motor vehicle).[4] Simply put, ownership of a vehicle within the meaning of Code § 18.2-102 does not require registration with or the issuance of a certificate of title by DMV.[5]

---

[4] Furthermore, as the Commonwealth noted at oral argument, Code § 18.2-102 applies not just to the unauthorized use of motor vehicles, but prohibits the unauthorized use of "any animal, aircraft, vehicle, boat or vessel[.]" Because DMV does not register, let alone issue certificates of title for, horses and many other conveyances covered by the statute, a certificate of title issued by DMV cannot be a necessary element of establishing ownership under Code § 18.2-102.

[5] This is not to say that a DMV certificate of title is of no value in a prosecution of unauthorized use of a motor vehicle brought under Code § 18.2-102. Both the DMV registration

9

Recognizing the foregoing, King conceded at oral argument that reference to DMV records regarding registration and or the issuance of a certificate of title is not the "only way" to prove ownership of a motor vehicle for the purpose of Code § 18.2-102. Having made the concession, King pivoted to a slightly different argument—that the evidence was insufficient to establish that Robertson owned the Jetta because he never expressly testified that his brother signed over the certificate of title to him when he gave him the vehicle.

Although we previously have held that the transfer of ownership of a motor vehicle requires that "(1) the [prior] owner must actually deliver the endorsed certificate of title to the transferee, and (2) the [prior] owner must deliver possession of the vehicle to the transferee[,]" *Allstate*, 260 Va. at 155 (citing *Nationwide Insurance Company v. Storm*, 200 Va. 526, 528-29 (1959)), it does not follow that explicit testimony regarding the signing over of a certificate of title is required to establish a transfer of ownership. As noted above, Robertson's unchallenged testimony regarding his ownership of the car and that he had been given the car by his brother was sufficient to allow a rational factfinder to conclude that Robertson's brother had properly transferred his ownership interest to Robertson. After all, as noted above, it is *King*'s position that inherent in the use of the word "owner" is that the person has title to an item of personal property. Absent some evidence to suggest that the gift somehow failed to successfully transfer ownership to Robertson, the evidence was more than sufficient to allow a rational factfinder to

---

record and any certificate of title issued by DMV are, as the Court of Appeals recognized in *McDuffie,* "evidence of ownership." 49 Va. App. at 175-76. The recognition that both are relevant evidence when ownership is in issue does not, however, lead to the conclusion that a certificate of title is either necessary or dispositive in resolving questions of ownership in prosecutions under Code § 18.2-102. Rather, if offered, a certificate of title merely is a piece of evidence to be considered and weighed by the factfinder. To the extent *McDuffie* can be read as holding otherwise, it was incorrectly decided.

10

conclude that Robertson had valid title to the Jetta, and therefore, was the car's owner for the purpose of Code § 18.2-102 under even King's proffered definition.[6]

### III. CONCLUSION

To obtain a conviction for unauthorized use of a motor vehicle, the Commonwealth had to prove King took the Jetta "without the consent of the owner thereof[.]" Code § 18.2-102. For the reasons stated above, the Commonwealth's evidence was sufficient to allow a rational factfinder to conclude, beyond a reasonable doubt, that Robertson was the owner of the Jetta. Accordingly, we affirm the judgment of the Court of Appeals.

*Affirmed.*

---

[6] Contrary to King's assertion, Robertson's testimony that he did not register the car or seek a new certificate of title from DMV does not suggest that he did not receive valid title when his brother gave him the car. *See Allstate*, 260 Va. at 156. In explaining why he did not seek to register the vehicle, Robertson did not say that it was because he did not have valid title, but rather, that he was ineligible to do so because of the status of his driver's license. As that is the only reason he gave, the evidence does not suggest, let alone compel, a conclusion that he failed to do so because his brother had failed to successfully give him the car.